USDC-EDPA
REC'D CLERK

2011 JAN 24  PM 11: 26

Reiss Law LLC
Jared H. Reiss, Esq.
3411 Midvale Ave,
Philadelphia PA, 19129
(p) (215) 839-8204
(f)  (267) 556-6275
jreiss@reisslawllc.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Securities and Exchange Commission<br>    Plaintiff,<br><br>    v.<br><br>Young Et. Al<br>    Defendants<br><br>Oak Grove Partners, L.P. et. al.<br>    Relief Defendants | CASE NUMBER: 2:09-cv-01634-JP<br><br><br>**IN RE: Reiss, Gary and Leslie<br>Investor Number -18** |

**Consolidated Response Of Investor No. 18 to Receiver Louis C. Bechtle's Omnibus Motion for Final Resolution of Disputed Creditor Claims and Motion To Approve Proposed Plan of Interim Distribution**

Investor 18, Gary C. Reiss and Leslie M. Reiss (collectively the "Investor"), by and through their undersigned counsel, Reiss Law LLC, hereby file this consolidated response to the Receiver Louis C. Bechtle's Omnibus Motion for Final Resolution of Disputed Creditor Claims and Motion To Approve Proposed Plan of Interim Distribution. Investor 18 asserts that this Court should rule that Investor's withdraw of $500,000, transferred to Investor from Oak Grove Partners, L.P. ("Oak Grove") at the instruction of Anthony Walker Young ("Young") without the consent of Investor, was by intent and in fact a withdraw by Investor from Investor's accounts and interests in Acorn Capital Management, LLC and Acorn II, L.P. (collectively "Acorn"), and should serve to reduce Investor's claim against the Receivership and correspondingly increase

Oak Grove's claim against the Receivership in the amount of $500,000 and that Oak Grove should be precluded from seeking a recovery against investor of such funds outside the Receivership.    The grounds in support of this response are set forth in the accompanying Memorandum.

Respectfully Submitted,

**Date: January 24, 2011**

By: _____

Jared H. Reiss, Esquire
Reiss Law, LLC
3411 Midvale Ave
Philadelphia, PA, 19129
(215) 839-8204
(267) 556-6275 (fax)
jreiss@reisslawllc.com
Attorney for Gary and Leslie Reiss

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Securities and Exchange Commission**<br>**Plaintiff,** | **CASE NUMBER: 2:09-cv-01634-JP** |
| **v.** | |
| **Young Et. Al.**<br>**Defendants** | **IN RE: Reiss, Gary and Leslie Investor**<br>**Number -18** |
| **Oak Grove Partners, L.P. et. al.**<br>**Relief Defendants** | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing consolidated response to the Receiver Louis C. Bechtle's Omnibus Motion for Final Resolution of Disputed Creditor Claims and To Approve Proposed Plan of Interim Distribution via electronic mail on the following:

Catherine E. Pappas
Securities & Exchange
Commission
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, PA 19106

Robert E. Welsh, Jr.
Catherine M. Recker
Welsh & Recker, P.C.
2000 Market Street, Suite 2903
Philadelphia, PA 19103

Mark E. Cedrone
The Law Offices of Mark E.
Cedrone, P.C.
123 S. Broad Street, Suite 810
Philadelphia, PA 19109

Dated : January 24, 2011

Gregory P. Miller
Stephen G. Stroup
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

William J. Winning
Jennifer M. McHugh
Cozen O'Connor
1900 Market Street
The Atrium, 4th Floor
Philadelphia, PA 19103

Jared H. Reiss

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Securities and Exchange Commission**<br>**Plaintiff,** | **CASE NUMBER: 2:09-cv-01634-JP** |
| **v.** | |
| **Young Et. Al.**<br>**Defendants** | **IN RE: Reiss, Gary and Leslie Investor**<br>**Number -18** |
| **Oak Grove Partners, L.P. et. al.**<br>**Relief Defendants** | |

## ORDER

This matter came to be heard upon the Motion of Louis C. Bechtel (the "Receiver") the Equity Receiver for Defendants Donald Anthony Walker Young, Acorn Capital Management, LLC, Acorn II, LP and/or any entities that the Defendants own or Control or in which any of them have an interest (collectively "Acorn Entities"), for an order resolving certain disputed claims in connection with this Court's May 14, 2010 Claims Procedure Order and the Receiver's Motion to Approve an Interim Distribution of Funds to creditors. The Court having considered the Motions and supporting papers and all responses, objections and/or opposition to the Motions, it is hereby ORDERED that:

(i)     Investor 18's withdraw of $500,000, transferred to Investor from Oak Grove Partners, L.P ("Oak Grove") at the instruction of Anthony Walker Young and without the consent of Investor, was by intent and in fact a withdraw by Investor from Investor's accounts and interests in Acorn Capital Management, LLC and Acorn II, L.P., and serves to reduce Investor 18's claim against the Receivership and correspondingly increase Oak Grove's claim against the Receivership in the amount of $500,000;

(ii)    Oak Grove is hereby precluded from seeking a recovery outside the Receivership against Investor 18 of such funds; and

(iii)   The initial distribution of funds from the Receivership shall be adjusted to reflect these respective changes in the claims of Oak Grove and Investor 18.

Date:_____ ___ ___ _____

                                        The   Honorable   John   R.   Padova,   U.S.D.J

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Securities and Exchange Commission<br>Plaintiff,<br><br>v.<br><br>Young Et. Al.<br>Defendants<br><br>Oak Grove Partners, L.P. et. al.<br>Relief Defendants | CASE NUMBER: 2:09-cv-01634-JP<br><br><br>IN RE: Reiss, Gary and Leslie Investor<br>Number -18 |

### Memorandum of Law in Support of the Consolidated Response Of Investor No. 18 to Receiver Louis C. Bechtle's Omnibus Motion for Final Resolution of Disputed Creditor Claims and Motion To Approve Proposed Plan of Interim Distribution

### I.   Introduction

Investor 18, Gary C. Reiss and Leslie M. Reiss (collectively the "Investor"), by and through their undersigned counsel, Reiss Law LLC, hereby file this consolidated response to the Receiver Louis C. Bechtle's Omnibus Motion for Final Resolution of Disputed Creditor Claims and To Approve Proposed Plan of Interim Distribution.  The Receiver has determined that the Allowed Claim of Investor No. 18 is $926,352.  However, Investor 18 asserts that: (i) the Allowed Claim of Investor No. 18 should be reduced by $500,000 to a total $426,352 in light of Investor 18's withdraw of $500,000 which, Donald Anthony Walker Young ("Young") unbeknownst to Investor and without Investor's consent caused to be paid to Investor out of Oak Grove Partners, L.P. ("Oak Grove"); (ii) Oak Grove's Allowed Claim should be correspondingly increased by $500,000 to $4,017,762;  and (iii) Oak Grove should be limited to recovering such amounts from the Receivership and should not have the right to pursue a direct claim against Investor 18.

1

To the extent, if any, that this Court accepts the Receiver's position to exclude this transaction from the Receivership, the inequitable result would likely be that Investor 18 would be subject to direct liability to Oak Grove in the amount of $500,000. See a copy of Oak Grove's demand letter to the Reisses for $500,000, a copy of which is attached as Exhibit A.  In light of the information contained in the Receiver's Preliminary Distribution Motion and the "rising tide method" advocated by the Receiver, Investor 18 is likely to recover nothing of the $926,352 that Receiver has determined is Investor 18's net loss.  The effect would be that, in addition to losing their life savings as a result of Young's fraud, the Reisses would also be required to pay Oak Grove the amount of $500,000.  In which event, the Reisses would be the only 'net loser' investor to be put in this position of direct liability to Oak Grove.  Simultaneously, Oak Grove would unfairly be enabled to pursue 100% of the $500,000 misappropriated by Young while all other Creditors and Investors are limited to a proportional recovery from the Receivership.

There is no equitable or legal justification for the Receiver's proposed deviation from the treatment of all other transactions related to the Receivership and singling out Investor 18 as the only investor to would have direct liability to Oak Grove relating to the transactions of Young. It is undisputed that Young commingled funds of Oak Grove and Acorn and generally treated the Oak Grove and Acorn as a single account. The Receiver has determined that:

> [Young] executed many unauthorized and undisclosed transfers from and to Oak Grove's accounts. For example, he paid redemptions to Acorn Investors out of funds from Oak Grove's accounts, and directed deposits of Acorn Investors into the accounts of Oak Grove. In some instances, Young satisfied capital calls made on Oak Grove using funds belonging to the Acorn Entities. In other instances, Young caused Oak Grove to issue capital calls to its investors so that Young could use those funds to pay redemption requests from Acorn investors.

*Memo in Support of Receiver's Omnibus Motion*, p. 8. Further Oak Grove admits the commingling of Oak Grove and Acorn funds, stating "Forensic accounting examinations

2

conducted on behalf of the Receivership and Oak Grove have each revealed that Mr. Young abused this authority repeatedly by transferring funds back and forth between Receivership and Oak Grove accounts for no legitimate business purpose." *Oak Grove's response to the Receiver's Omnibus Motion*, p. 2.

There is no conceivable reason that the Reisses' withdraw of $500,000 should be treated any differently from the numerous other examples of Young's commingling of Oak Grove and Acorn funds as referred to by both the Receiver and Oak Grove. As such, Investor 18 asks the Court to Order that Investor 18's withdraw of $500,000, transferred to Investor from Oak Grove Young and without the consent of Investor, was by intent and in fact a withdraw by Investor from Investor's accounts and interests in Acorn Capital Management, LLC and Acorn II, L.P., and serves to reduce Investor 18's claim against the Receivership and correspondingly increase Oak Grove's claim against the Receivership in the amount of $500,000.

II.   **Background**

A. <u>Over The Course Of Close To A Decade, Young Fraudulently And Methodically Induced The Reisses To Commit Their Entire Financial Security To Acorn.</u>

The Reisses initially invested in Acorn beginning in July of 2001. The Reisses's trusted, at first almost half and later substantially all of their capital assets to the care of Young. Over the 9 years of their participation in Acorn (the "Activity Period"), Young fraudulently induced to the Reisses to commit more and more of their financial assets and security to Acorn. At Young's strenuous urging and his promise of returns well in excess of the cost of mortgage interest, the Reisses took out an interest only Mortgage approaching three quarters of a million dollars on their previously paid off home and contributed those funds to Acorn. Young promised that he would pay the mortgage interest out of the Reisses' Acorn income and that the excess income would increase the Reisses' principal in Acorn. What actually happened was, the Reisses

3

incurred significant debt on their home, the principal of which remained unpaid, while Young used the loan proceeds to pay the interest and further his fraud.

Through 2004, the Reisses maintained close to half their capital assets invested with a reputable broker who received modest, market comparable returns and the other half with Acorn. After steady pressure from Young, insidiously bolstered by his seemingly large but actually fictional returns, the Reisses moved their remaining assets from their other broker and invested them with Young.  As Acorn held substantially of their assets, the Reisses, throughout the Activity Period relied on the fictional income produced by the Acorn to meet their regular living expenses believing that they had close well over $2,000,000 in principal assets to provide for future needs and to enable them to conduct future business.

By way of further background and information, Investor hereby incorporates the facts stated in the Affidavit of Gary C. Reiss, a complete and accurate copy of which is attached hereto as Exhibit B.

B. Investor's $500,000 Withdraw From Acorn.

In September and October of 2008, Investor approached Young to request a $500,000 withdraw from his Acorn account to loan funds (the "Prime Loan") to Sudhakar Goverdhanam and Rabika Gullapalli to enable them to conduct certain transactions with Prime Technology Group, Inc. ("Prime"), a company owned by them. In response to this request, Young informed Investor that it might be prudent to initially structure the withdraw as a loan against the Investor's Acorn account in order to enable Young to liquidate the necessary investment assets over time in order to maximize the return on the liquidated assets and to best protect the interest of Acorn and Investor. See Exhibit B. While Investor understood that the Withdraw may be initially structured as a loan against is Acorn interest, is was always clear that any such loan

would be from Acorn and would short term loan only for the purpose of allowing Young the flexibility to appropriately handle the funds.[1]   See Exhibit B.

On September 29, 2008, in response to Investor's request for a withdraw from Acorn, Young caused the amount of $160,000 (the "First Withdraw") to be wired directly to the account Prime Technology Group, Inc., in relation to the transaction referenced above.[2]   On October 21, 2008 Young caused the amount of $340,000 to be paid to the Investor (the First and Second Withdraws are collectively referred to as the "Withdraws").   See Exhibit B.

Only after learning of Young's fraud, did Investor also learned that in order to pay the Withdraws, Young caused Oak Grove to wire funds directly to Prime's account (in the case of the First Withdraw) and the Investor's personal Wachovia account (in the case of the Second withdraw).   *Id.*

All evidence demonstrates that the Withdraws were always intended as transactions between Acorn and Investor and were to come from the Investor's Acorn account.   It is undisputed that, Young caused the Funds to be paid to Investor in response to a request for a withdraw from Acorn.   Investor 18 did not have any relationship with Oak Grove, never had any dealings with Oak Grove, never entered into any agreement with Oak Grove, never signed a note or loan agreement with Oak Grove, never had any communications with any representative of Oak Grove (other than Young, who, as far as Investor knew, was acting in his capacity as the

---

[1] Neither the Receiver nor Oak Grove argue that the Investor received or requested a loan from Oak Grove. The receiver's determination relating to the Withdraw does not turn on whether there was loan from Acorn or a regular withdraw, as the receiver determined that any loan to investors in Acorn against their investment is considered a withdraw. Rather the only issue raised by Oak Grove and the Receiver is whether the transaction should rightfully be considered under the Receivership. Investor asserts that it certainly should.

[2] It is of note that these funds went directly from the account of Oak Grove to the account of Prime, yet Oak Grove asserts that while the funds were transferred to Prime and not Investor, Investor is responsible for such funds as they were sent at Investor's direction and for Investor's benefit. Neither Oak Grove or the Receiver point to any reason why the same principal does not apply to transactions conducted for the benefit of Acorn at the direction of Young. It is undisputed that the funds were sent out of the Oak Grove's account at the behest of Young, that he caused them to be sent on to Reiss and Prime. That does not change the fact that these funds were paid on the account of Acorn and it is Acorn who is liable to Oak Grove for the repayment of such funds.

representative of Acorn), never, prior to the discovery of the fraud, received any demand for payment from Oak Grove, request for interest, any statement of amount due, or statement of account. See Exhibit B.

Furthermore, all discussions and correspondence between Young and Gary Reiss relating to the Withdraws supports the conclusion that the Withdraws are from Acorn. See Exhibit B. For example, in response to Gary Reiss's October 15, 2008, inquiry relating to the status of the withdraw request, Young stated that the Second Withdraw "should have gone out" and when asked what 'gone out' means, Young responded that "'Gone out' means if it has left *our bank*..." See Exhibit C, (emphasis added). Young's words "*our bank*" could only mean the Acorn bank account as Young, in dealing with Investor was always holding himself out to be a representative of Acorn. Young's e-mail referring to "our bank" came from the e-mail address of walker@acorncapitalmgt.com and made no reference to Oak Grove Partners. See Exhibit C.

## III.  **Argument**

### A. The Circumstances, The Evidence And Young's Pattern Of Conduct Establish the Fact That The Withdraws Are Related To Investor's Acorn Account And Are Thus Properly Within The Receivership

According to the Receiver's motion papers, the Receiver rejected Investor's assertion that the Withdraws were within the Receivership "on the basis that no Receivership entity came into possession of the funds at issue, *they were never commingled with Receivership assets*." *Memo in Support of Receiver's Omnibus Motion,* at 9 (emphasis added). Here, the Receiver mistakes the crux of the issue – that Young paid the Withdraws from Oak Grove, in itself constitutes commingling with the receivership as Young used Oak Grove assets to satisfy the withdraw obligation of Acorn.

6

In order to conclude that the Withdraws are outside the scope of the Receivership, Oak Grove and the Receiver seemingly ignore: (i) the context of the relationship of the Investor and Acorn; (ii) the evidence and discussions between Investor and Young; and (iii) Young's undisputed pattern of comingling of funds of Acorn and Oak Grove by paying "redemptions to Acorn Investors out of funds of Oak Grove." *Receiver's Memo in support of the Omnibus Motion*, p. 8. While the Receiver acknowledges that Young "executed many unauthorized and undisclosed transfers to and from Oak Grove's accounts," Oak Grove and the Receiver cite the lack of proper accounting records to establish the nature of Withdraw in this instance. *Id.*

Due to Young's fraud, it should not be unexpected that the records of Acorn did not reflect the Withdraws or the receipt of funds from Oak Grove, but any explanation other than Investor's intent to withdraw funds from Investor's own account strains credulity. Why would Investor request $500,000 funds from Oak Grove when he believed he had well in excess of $2,000,000 in Acorn? Why would Oak Grove give money to Investor when they had no relationship, no agreements, and no documentation of any kind? Notwithstanding the fact that the funds did not actually pass through the Acorn account, it is apparent that the funds were paid on behalf of Acorn and for the benefit of Acorn. There is no evidence to suggest that Investor ever willingly entered into a transaction with Oak Grove. Rather, that Young caused these amounts to be wired to the Prime account and the Investor's Wachovia account from Oak Grove is consistent with Young's fraud conducted on Acorn and Oak Grove and his pattern of comingling of Acorn and Oak Grove funds.

Contrary to Oak Grove and Receiver's positon, all evidence demonstrates that the Withdraws were a transaction between Acorn and the Investor. That Young obtained the funds from Oak Grove, whether by misappropriation, commingling, intercompany loan, fraud, or

7

otherwise and directly deposited such funds in the accounts of Prime and Investor, does not change the underlying nature of the transaction. Young, consistent with his pattern of behavior, used the assets of Oak Grove to satisfy the obligations of Acorn to Investor. That he did not first deposit such funds in the Acorn account, is simply an extension of his fraud as an attempt to hide his conduct. Directing Oak Grove to pay the funds directly to Prime and Reiss is at best, for the convenience of Young or, at worst, an attempt to further perpetuate Young's scheme.

B. Equity Requires That The Withdraws Be Included In The Scope Of The Receivership To Ensure That Investor Is Not Placed In A Worse Position Than Other Similarly Situated Investors And To Not Further Compound Investor's Already Catastrophic Damage At The Hands Of Young.

In the instant matter, Oak Grove seeks to exploit Young's fraud and misconduct (in failing to properly account for the Withdraws and wrongful appropriation of Oak Grove's funds) to grab for the chance to recover 100% of a particular $500,000 loss caused by Young rather than be limited to a proportional recovery, like all other similarly situated creditors. In order to do this, Oak Grove asks the Receiver and the Court to compound the devastating finical loss of the Reisses, who believed that they had well over $2,000,000 in capital assets and have now learned that they are likely to recover nothing from Acorn.

To the extent, if any, that this Court accepts the Receiver's position to exclude this transaction from the Receivership, the inequitable result would likely be that Investor 18 would be subject to direct liability to Oak Grove in the amount of $500,000. See Exhibit A. In light of the information contained in the Receiver's Preliminary Distribution Motion and the "rising tide method" advocated by the Receiver, Investor 18 is likely to recover nothing of the $926,352 that Receiver has determined is Investor 18's net loss of principal to say nothing of the loss of fictional growth. If the Reisses were held directly liable to Oak Grove for $500,000 as a result of

Young's misappropriation of Oak Grove's funds, there is little doubt the financial catastrophe caused by Young be compounded into bankruptcy.

The effect would be that, in addition to losing their life savings as a result of Young's fraud, the Reisses would also be required to pay Oak Grove the amount of $500,000. In which event, the Reisses would be the only 'net loser' investor to be put in this position of direct liability to Oak Grove. Simultaneously, Oak Grove would unfairly be enabled to pursue 100% of the $500,000 misappropriated by Young while all other Creditors and Investors are limited to a proportional recovery from the Receivership.

There is no equitable or legal justification for the Receiver's proposed deviation from the treatment of all other transactions related to the Receivership and singling out Investor 18 as the only investor to would have direct liability to Oak Grove relating to the transactions of Young. Both Oak Grove and the Receiver acknowledge and reference multiple instances where Young used Oak Grove assets to pay Acorn investors; yet only in this instance is an investor potentially directly liable to Oak Grove for Young's conduct. This result would be extremely unfair and in conflict with the principals of equity.

## Conclusion

Wherefore, based on the forgoing, Investor hereby requests a determination by the Court Receiver that:

(i)     Investor 18's withdraw of $500,000, transferred to Investor from Oak Grove Partners, L.P ("Oak Grove") at the instruction of Anthony Walker Young and without the consent of Investor, was by intent and in fact a withdraw by Investor from Investor's accounts and interests in Acorn Capital Management, LLC and Acorn II, L.P., and serves to reduce Investor 18's claim against the Receivership

and correspondingly increase Oak Grove's claim against the Receivership in the amount of $500,000;

(ii)     Oak Grove is precluded from seeking a recovery outside the Receivership against Investor 18 of such funds; and

(iii)    The initial distribution of funds from the Receivership shall be adjusted to reflect these respective changes in the claims of Oak Grove and Investor 18.

### Request for Oral Argument

Investor 18 hereby requests Oral Argument.

Respectfully Submitted,

Date: **January 24, 2011**                    By: _____

Jared H. Reiss, Esquire
Reiss Law, LLC
3411 Midvale Ave
Philadelphia, PA, 19129
(215) 839-8204
 (267) 556-6275 (fax)
jreiss@reisslawllc.com
Attorney for Gary and Leslie Reiss

# Exhibit A

# DrinkerBiddle&Reath
### L L P

Stephen G. Stroup
Counsel
215-988-2547 Direct
215-988-2757 Fax
stephen.stroup@dbr.com

*Law Offices*

ne Logan Square, Ste. 2000
Philadelphia, PA
(910)-6606

215-988-2700 phone
215-988-2757 fax
www.drinkerbiddle.com

November 30, 2010

**VIA ELECTRONIC MAIL AND FIRST CLASS MAIL**

Jared H. Reiss, Esquire
Reiss Law LLC
3411 Midvale Avenue
Philadelphia, PA  19129

     **Re:   Oak Grove Partners, L.P. – Demand for Repayment of Funds**

Dear Mr. Reiss:

     I write to you as follow-up to our September 1, 2010 telephone conversation, in which we discussed $500,000 in Oak Grove Partners, L.P. ("Oak Grove") funds that were provided improperly to your clients, Gary and Leslie Reiss, via wire transfers dated September 29, 2008 and October 21, 2008.  See Exhibit A.  Please accept this letter as Oak Grove's formal, written demand for repayment of these funds in their entirety by Friday, December 10, 2010.  In the event that full payment is not received, this letter shall serve as notice of Oak Grove's intent to seek judicial intervention to obtain repayment with interest, in addition to any other remedies available both in law and equity.

     Very truly yours,

     Stephen G. Stroup

SGS

# Exhibit B

Reiss Law LLC
Jared H. Reiss, Esq.
3411 Midvale Ave,
Philadelphia PA, 19129
(p) (215) 839-8204
(f) (267) 556-6275
jreiss@reisslawllc.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Securities and Exchange Commission<br>Plaintiff, | CASE NUMBER: 2:09-cv-01634-JP |
| v.<br>Young Et. Al.<br>Defendants | **AFFIDAVIT**<br>**IN RE: Reiss, Gary and Leslie**<br>**Investor Number -18** |
| Oak Grove Partners, L.P. et. al.<br>Relief Defendants | |

## AFFIDAVIT OF GARY C. REISS

COMMONWEALTH OF PENNSYLVANIA        :
                                                                            : ss.
COUNTY OF PHILADELPHIA                        :

I, Gary C. Reiss, being duly sworn according to law, depose and state as follows:

1.  My name is Gary C. Reiss, and I reside at 2960 Windy Bush Road, Newtown. Pennsylvania 18940.

2.  I am an adult individual.  Unless otherwise stated, I have personal knowledge of each fact in this affidavit.

3.  I am making this affidavit in connection with Leslie M. Reiss and my accounts and interests (the "Reiss Account") in Acorn Capital Management, LLC and Acorn II, L.P. (collectively the "Fund"), and my dealings with Donald Anthony Walker Young ("Young") in relation thereto.   (Gary and Leslie Reiss are hereinafter collectively referred to as "Investor")

4.  From the approximate period of July 16, 2001 through February 12, 2009 (the "Activity Period"), Investor contributed a total of $2,247,262.24 to the Fund (the "Reiss Investment").

5.  During the Activity Period, my understanding of the performance of the Fund and the Reiss Investment was entirely reliant on the representations of Young.

6.  During the Activity Period, my dealings with the Fund were directly with Young and/or his designees and I understood that Young had exclusive control over the Fund.

7.  During the Activity Period I regularly caused Young to make withdraws from the Reiss Account by instructing Young to make payments directly to third parties, i.e. payments to Washington Mutual to pay my Mortgage.

8.  During the Activity Period, my instructions to Young relating to Transactions with the Fund, were often delivered and or discussed via e-mail and phone.

9.  During the Activity Period, Investor's transactions with the Fund, whether withdraw or contribution, were generally conducted through Cresap d/b/a First Clearing.

10. During the Activity Period, when I made withdraws from the Fund and instructed those amounts to be deposited into my personal account, such amounts would generally appear on my bank statements as a transfer in from "First Clearing."

11. In or around September 2008, I wished to make a loan of $490,000 to Sudhakar Goverdhanam and Rabika Gullapalli to enable them to conduct certain transactions with Prime Technology Group, Inc., a company owned by them (the "Prime Loan").

12. It was my intent to make the Prime Loan by withdrawing those funds from the Reiss Account within the Fund.

13. On or before September 24, 2008, Young and I have various conversations regarding the Prime Loan and I instructed Young to make the first distribution under the Prime Loan in the amount of $160,000 (the "First Distribution"). See a complete and accurate copy of the September 24, 2008 e-mail correspondence whereby by Prime provided Young with wiring instructions for the First Distribution attached as Exhibit A.

14.   Prior to September 24, 2008, I expected and instructed Young to make the First Distribution from my funds in the Reiss Account in the Fund.

15.   In my previous investing experience, I was familiar with transactions whereby my investment manager/adviser would, on a short term basis, cover the capital needs by loaning money against the invested funds and liquidate the necessary investment assets over time in order to maximize the return on the liquidated assets and to best protect the interest of the Fund.

16.   During my discussions with Young around September 30, 2008, Young advised me that, based on the current capabilities of the Fund and in order to achieve the greatest financial advantage, that it _may_ be prudent to structure the First Distribution as a loan from the Fund against Reiss Account, rather than immediately 'liquidating' the assets of the Reiss Account to cover the First Distribution.   In our discussions relating to the possibility that the First Distribution would be structured as a loan, Young confirmed that such loan, if we agreed to the loan structure, would operate essentially as described in ¶15 above and that the Fund would provide me with the appropriate paperwork to document the loan.

17.   The First Distribution was received by Prime at 3:20 pm on September 29, 2010. See a complete and accurate copy the e-mail correspondence confirming Prime's receipt of the First Distribution by Prime attached hereto as Exhibit B.

18.   As of September 29, 2010, the date of the First Distribution, Young, the Fund, and I had not agreed to structure the First Distribution as a loan and I expected it to be simply paid as a withdraw out of the Reiss Account.

19.   On September 30, 2010, after the First Distribution was already made, Young first informed me that the First Distribution was to be structured as a loan from the Fund.  A see the complete and accurate copy of my e-mail September 30, 2008 e-mail to Young stating "The 160K was that a loan or did you liquidate my position?" and his response stating "Loan, I will get paperwork to you." attached hereto as Exhibit C.

20.   In October of 2008, I instructed Young to make a second distribution to me of $340,000 to enable me to cover the remainder of the "Prime Loan" (the "Second Distribution").

21.   On or about October 21, 2008, the Second Distribution of $340,000 was wired into my personal Wachovia account and appeared on my statement as a transfer in from "First Clearing" as was consistent with both: (i) all of my withdraws from the Fund that were deposited into my Wachovia account; and (ii) any transfers from my personal Cresap Account to my Wachovia account.

22.    Young never provided me with any paperwork reflecting or relating to the purported loan for the First and Second Distributions and never defined the specific terms of the purported loan from the Fund.

23.    From September 30, 2008 through February of 2009, it never became clear to me whether Young ultimately liquidated enough of the assets related to the Reiss Account to cover any short term loan from the Fund to cover the First and Second Distribution.

24.    On or about February 12, 2009, after Prime had repaid me a portion of the Prime Loan, I intended to redeposit the amount of $130,000 into the Fund, at which time it was still not clear to me whether such funds would simply be contributions to the Reiss Account or used to repay any outstanding portion of any loan.

25.    At Young's instructions, the $130,000 payment, was wired directly to the account of Donald and Neely Young.

26.    In July of 2010, during my investigations of these transactions in connection with the SEC's action against Young, et al., I first learned that the First Distribution was wired directly to Prime's Account from an account held by Oak Grove Partners.

27.    On or about August 20, 2010, , during my investigations of these transactions in connection with the SEC's action against Young, et al., I learned for the first time that the Second Distribution was transferred to my Wachovia account from an account held by Oak Grove Partners.

28.    As of the date of this Affidavit, I have learned that Young, likely acting violation of his duties to Oak Grove Partners, unbeknownst to me and without my consent, caused funds covering the First and Second Distributions to be paid by Oak Grove Partners *on behalf of the Fund*.

29.    These funds which Young apparently caused Oak Grove Partners to wire directly to Prime's account (in the case of the First Distribution) and my personal Wachovia account (in the case of the Second Distribution), were, in fact, paid on behalf of the Fund and for the benefit of the Fund. Young caused these amounts to be wired directly to the Prime account and my Wachovia account, at best, for the convenience of Young or, at worst, to further perpetuate Young's theft of assets from Oak Grove Partners and/or the Fund.

30.    At no point did I ever knowingly have any dealings with Oak Grove Partners.

31.    On October 15, 2008, when I e-mailed Young to inquire about the status of the Second Distribution for the Prime Loan, stating "Loan Status?" The Loan referred to in my October 15, 2008 e-mail is the Prime Loan and I was inquiring to determine whether the Fund had made the Second Distribution to enable me to

finance the remainder of the Prime Loan.  A complete and accurate copy of the October 15, 2008 E-mail is attached as Exhibit D.

32.     In response to my inquiry, Young stated that the Second Distribution "should have gone out" and when I asked what 'gone out' means, Young responded that "'Gone out'" means if it has left *our bank*…" See Exhibit D, (emphasis added).

33.     At that time, I understood that "our bank" meant the Fund's bank account, who I understood to be making the Second Distribution in the same structure as the "First Distribution." I had no cause to believe that "our bank" referred to any other bank or account than one belonging to the Fund and had never had any discussions relating to Oak Grove Partners.  Young's e-mail referring to "our bank" came from the e-mail address of walker@acorncapitalmgt.com and made no reference to Oak Grove Partners. See Exhibit D.

34.     At all times, Young represented to me that my dealings relating to the First and Second Distributions were exclusively with the Fund.

35.     I never entered into any agreement with Oak Grove Partners.

36.     I never signed any note or loan agreement with Oak Grove Partners.

37.     I never paid any interest on any loan to Oak Grove Partners.

38.     I never had any communications with any representative of Oak Grove Partners (excluding Young who I understood was communicating to me as a representative of the Fund).

39.     I have never received any demand for payment of purported interest or principal due to Oak Grove Partners.

40.     I have never received any statement of purported interest or principal due to Oak Grove Partners.

41.     At no point did Young ever suggest to me that First Distribution or Second Distribution would be paid by any party other than the Fund.

42.     At no point did Young ever suggest to me that any purported loan from the Fund for the First Distribution or Second Distribution would be funded or paid by any party other than the Fund.

_____
Signature of Affiant

State / Commonwealth of _New Jersey_ ⎫
                                      ⎬ SS.
County of _Camden_                    ⎭

On this the _1_ day of _September_, _2010_, before me,
           Day        Month          Year

_Debra Willis_, the undersigned Notary Public, personally appeared
Name of Notary Public

_Gary Reiss_.
Name (s) of Signer (s)

```
DEBRA A WILLIS
Notary Public
State of New Jersey
My Commission Expires Aug 7, 2014
```

_____
Signature of Notary Public

6

# Exhibit A

## Jared Reiss

| | |
|---|---|
| **From:** | Sudhakar Goverdhanam [sgoverdhanam@2xprime.com] |
| **Sent:** | Monday, September 29, 2008 10:46 AM |
| **To:** | walker@acorncapitalmgt.com |
| **Cc:** | Gary Reiss; jdude@2xprime.com |
| **Subject:** | FW: Wire Information |

**Importance:** High

Hi Tony,
Can you confirm is this went out? It has net hit our account yet.
Sud

**From:** Sudhakar Goverdhanam
**Sent:** Wednesday, September 24, 2008 4:28 PM
**To:** walker@acorncapitalmgt.com
**Cc:** 'Gary Reiss'; Gary Reiss.; Joseph Dude; 'Jared Reiss'
**Subject:** Wire Information
**Importance:** High

Tony,
Gary asked me to send you the wire information so you can kick-off $160k. He will call you to confirm.
Thanks

Penn Liberty Bank
353 W. Lancaster Ave
Wayne, PA  19087

ABA # 031918844
Account # 0415002161

**Sudhakar Goverdhanam | Chief Executive Officer**
**PRIME| PEOPLE. PROCESS. TECHNOLOGY.**
**Phone: 610.564.6373**
**Fax: 610.471.0568**
SGoverdhanam@2xprime.com | www.2xPRIME.com

GCR0134

# Exhibit B

## Jared Reiss

| | |
|---|---|
| **From:** | Joe Dude [jdude@2xprime.com] |
| **Sent:** | Monday, September 29, 2008 4:34 PM |
| **To:** | Gary Reiss; Tony Young |
| **Cc:** | Sudhakar Goverdhanam |
| **Subject:** | Re: Wire Information |
| **Attachments:** | image.png |

$160k

Sent from my Verizon Wireless BlackBerry

---

**From**: Gary Reiss <greiss@sunrx.com>
**Date**: Mon, 29 Sep 2008 16:19:23 -0400
**To**: Joseph Dude<jdude@2xprime.com>; Tony Young<walker@acorncapitalmgt.com>
**CC**: Sudhakar Goverdhanam<Sgoverdhanam@2xprime.com>
**Subject**: Re: Wire Information
Thanks all; please confirm the amount.



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791  X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

**From:** Joseph Dude <jdude@2xprime.com>
**Date:** Mon, 29 Sep 2008 16:10:20 -0400

GCR0276

**To:** Tony Young <walker@acorncapitalmgt.com>
**Cc:** Gary Reiss <greiss@sunrx.com>, Sudhakar Goverdhanam <Sgoverdhanam@2xprime.com>, Joseph Dude <jdude@2xprime.com>
**Subject:** RE: Wire Information

Tony,

Thanks.  They just received it at 3:20, they are not sure why a domestic transfer would take more than a day, but either way it's here.

I appreciate all your help.  It will hit our account today and we available immediately for use.

Joe

Joseph Dude **| Vice President, Finance and Administration**
Prime | People.  Process.  Technology.
**Phone:** 610.205.8750 | **Cell:** 215.901.1157| **Fax:** 610.265.3995
jdude@2xprime.com | www.2xprime.com <http://www.2xprime.com/>


**From:** D. A. Walker Young [mailto:walker@acorncapitalmgt.com]
**Sent:** Monday, September 29, 2008 4:09 PM
**To:** Joseph Dude
**Cc:** 'Gary Reiss'; Sudhakar Goverdhanam
**Subject:** RE: Wire Information

The fed reference number is as follows:

0929E3B75D5C002091

Please let me know since this was sent a couple of days ago....Tony


**From:** Joseph Dude [mailto:Jdude@2xprime.com]
**Sent:** Monday, September 29, 2008 3:49 PM
**To:** walker@acorncapitalmgt.com
**Cc:** Gary Reiss; Sudhakar Goverdhanam; Joseph Dude
**Subject:** RE: Wire Information
**Importance:** High

Tony,

We have confirmed with our bank the funds have not been received.  Can you check from your end and see what happened?

Thanks...Joe

Joseph Dude **| Vice President, Finance and Administration**
Prime | People  Process.  Technology.
**Phone:** 610.205.8750 | **Cell:** 215.901.1157| **Fax:** 610.265.3995
jdude@2xprime.com | www.2xprime.com <http://www.2xprime.com/>


**From:** Tony Young [mailto:walker@acorncapitalmgt.com]

GCR0277

**Sent:** Monday, September 29, 2008 10:51 AM
**To:** Sudhakar Goverdhanam
**Cc:** 'Gary Reiss'; Joseph Dude
**Subject:** Re: Wire Information

Will get you a ref number.... Tony
Sent from my Verizon Wireless BlackBerry

---

**From:** "Sudhakar Goverdhanam" <sgoverdhanam@2xprime.com>
**Date:** Mon, 29 Sep 2008 10:45:45 -0400
**To:** <walker@acorncapitalmgt.com>
**CC:** 'Gary Reiss'<greiss@sunrx.com>; <jdude@2xprime.com>
**Subject:** FW: Wire Information
Hi Tony,
Can you confirm is this went out? It has net hit our account yet.
Sud


**From:** Sudhakar Goverdhanam
**Sent:** Wednesday, September 24, 2008 4:28 PM
**To:** walker@acorncapitalmgt.com
**Cc:** 'Gary Reiss'; Gary Reiss.; Joseph Dude; 'Jared Reiss'
**Subject:** Wire Information
**Importance:** High

Tony,
Gary asked me to send you the wire information so you can kick-off $160k. He will call you to confirm.
Thanks

Penn Liberty Bank
353 W. Lancaster Ave
Wayne, PA  19087

ABA # 031918844
Account # 0415002161


Sudhakar Goverdhanam | Chief Executive Officer
PRIME| PEOPLE. PROCESS. TECHNOLOGY.
Phone: 610.564.6373
Fax: 610.471.0568
SGoverdhanam@2xprime.com <mailto:SGoverdhanam@2xprime.com> | www.2xPRIME.com <http://www.2xprime.com/>

GCR0278

**Jared Reiss**

| | |
|---|---|
| **From:** | Joseph Dude [Jdude@2xprime.com] |
| **Sent:** | Monday, September 29, 2008 4:10 PM |
| **To:** | D. A. Walker Young |
| **Cc:** | Gary Reiss; Sudhakar Goverdhanam; Joseph Dude |
| **Subject:** | RE: Wire Information |

**Importance:** High

Tony,

Thanks.  They just received it at 3:20, they are not sure why a domestic transfer would take more than a day, but either way it's here.

I appreciate all your help.  It will hit our account today and we available immediately for use.

Joe

Joseph Dude | **Vice President, Finance and Administration**
Prime | People.  Process.  Technology.
**Phone:** 610.205.8750 | **Cell:** 215.901.1157| **Fax:** 610.265.3995
jdude@2xprime.com | www.2xprime.com

**From:** D. A. Walker Young [mailto:walker@acorncapitalmgt.com]
**Sent:** Monday, September 29, 2008 4:09 PM
**To:** Joseph Dude
**Cc:** 'Gary Reiss'; Sudhakar Goverdhanam
**Subject:** RE: Wire Information

The fed reference number is as follows:

0929E3B75D5C002091

Please let me know since this was sent a couple of days ago....Tony

**From:** Joseph Dude [mailto:Jdude@2xprime.com]
**Sent:** Monday, September 29, 2008 3:49 PM
**To:** walker@acorncapitalmgt.com
**Cc:** Gary Reiss; Sudhakar Goverdhanam; Joseph Dude
**Subject:** RE: Wire Information
**Importance:** High

Tony,

We have confirmed with our bank the funds have not been received.  Can you check from your end and see what happened?

Thanks...Joe

Joseph Dude | **Vice President, Finance and Administration**
Prime | People.  Process.  Technology.
**Phone:** 610.205.8750 | **Cell:** 215.901.1157| **Fax:** 610.265.3995
jdude@2xprime.com | www.2xprime.com

GCR0279

**From:** Tony Young [mailto:walker@acorncapitalmgt.com]
**Sent:** Monday, September 29, 2008 10:51 AM
**To:** Sudhakar Goverdhanam
**Cc:** 'Gary Reiss'; Joseph Dude
**Subject:** Re: Wire Information

Will get you a ref number.... Tony

Sent from my Verizon Wireless BlackBerry

**From:** "Sudhakar Goverdhanam" <sgoverdhanam@2xprime.com>
**Date:** Mon, 29 Sep 2008 10:45:45 -0400
**To:** <walker@acorncapitalmgt.com>
**CC:** 'Gary Reiss'<greiss@sunrx.com>; <jdude@2xprime.com>
**Subject:** FW: Wire Information
Hi Tony,
Can you confirm is this went out? It has net hit our account yet.
Sud

**From:** Sudhakar Goverdhanam
**Sent:** Wednesday, September 24, 2008 4:28 PM
**To:** walker@acorncapitalmgt.com
**Cc:** 'Gary Reiss'; Gary Reiss.; Joseph Dude; 'Jared Reiss'
**Subject:** Wire Information
**Importance:** High

Tony,
Gary asked me to send you the wire information so you can kick-off $160k. He will call you to confirm.
Thanks

Penn Liberty Bank
353 W. Lancaster Ave
Wayne, PA 19087

ABA # 031918844
Account # 0415002161

**Sudhakar Goverdhanam | Chief Executive Officer**
**PRIME| PEOPLE. PROCESS. TECHNOLOGY.**
**Phone:** 610.564.6373
**Fax:** 610.471.0568
SGoverdhanam@2xprime.com | www.2xPRIME.com

2

GCR0280

## Jared Reiss

| | |
|---|---|
| **From:** | Joseph Dude [Jdude@2xprime.com] |
| **Sent:** | Monday, September 29, 2008 3:49 PM |
| **To:** | walker@acorncapitalmgt.com |
| **Cc:** | Gary Reiss; Sudhakar Goverdhanam; Joseph Dude |
| **Subject:** | RE: Wire Information |

**Importance:** High

Tony,

We have confirmed with our bank the funds have not been received.  Can you check from your end and see what happened?

Thanks...Joe

Joseph Dude | **Vice President, Finance and Administration**
Prime | People. Process. Technology.
**Phone:** 610.205.8750 | **Cell:** 215.901.1157| **Fax:** 610.265.3995
jdude@2xprime.com | www.2xprime.com

---

**From:** Tony Young [mailto:walker@acorncapitalmgt.com]
**Sent:** Monday, September 29, 2008 10:51 AM
**To:** Sudhakar Goverdhanam
**Cc:** 'Gary Reiss'; Joseph Dude
**Subject:** Re: Wire Information

Will get you a ref number.... Tony

Sent from my Verizon Wireless BlackBerry

---

**From:** "Sudhakar Goverdhanam" <sgoverdhanam@2xprime.com>
**Date:** Mon, 29 Sep 2008 10:45:45 -0400
**To:** <walker@acorncapitalmgt.com>
**CC:** 'Gary Reiss'<greiss@sunrx.com>; <jdude@2xprime.com>
**Subject:** FW: Wire Information
Hi Tony,
Can you confirm is this went out? It has net hit our account yet.
Sud

---

**From:** Sudhakar Goverdhanam
**Sent:** Wednesday, September 24, 2008 4:28 PM
**To:** walker@acorncapitalmgt.com
**Cc:** 'Gary Reiss'; Gary Reiss.; Joseph Dude; 'Jared Reiss'
**Subject:** Wire Information
**Importance:** High

Tony,
Gary asked me to send you the wire information so you can kick-off $160k. He will call you to confirm.
Thanks

GCR0281

1

Penn Liberty Bank
353 W. Lancaster Ave
Wayne, PA  19087

ABA # 031918844
Account # 0415002161

**Sudhakar Goverdhanam | Chief Executive Officer**
**PRIME| PEOPLE. PROCESS. TECHNOLOGY.**
**Phone:  610.564.6373**
**Fax: 610.471.0568**
SGoverdhanam@2xprime.com | www.2xPRIME.com

GCR0282

# Exhibit C

| | |
|---|---|
| **From:** | Gary Reiss [greiss@sunrx.com] |
| **Sent:** | Tuesday, September 30, 2008 11:34 AM |
| **To:** | Tony Young |
| **Subject:** | Re: The 160K was that a loan or did you liquidate my position? |

I assume we will paper the entire loan, not just this piece.

Thanks for getting me the 160K so fast.



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791 X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

---

**From:** Tony Young <walker@acorncapitalmgt.com>
**Reply-To:** Tony Young <walker@acorncapitalmgt.com>
**Date:** Tue, 30 Sep 2008 10:15:00 -0400
**To:** Gary Reiss <greiss@sunrx.com>
**Subject:** Re: The 160K was that a loan or did you liquidate my position?

Loan, I will get paperwork to you. The rest a few days after quarter end, which is today.... Tony

Sent from my Verizon Wireless BlackBerry

---

**From:** Gary Reiss <greiss@sunrx.com>
**Date:** Tue, 30 Sep 2008 09:34:05 -0400
**To:** Tony Young<walker@acorncapitalmgt.com>
**Subject:** The 160K was that a loan or did you liquidate my position?
hen will you be in a position to do the rest ?



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791  X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

# Exhibit D

## Jared Reiss

| | |
|---|---|
| From: | Tony Young [walker@acorncapitalmgt.com] |
| Sent: | Friday, October 10, 2008 5:43 PM |
| To: | Gary Reiss |
| Subject: | Re: How we doing with the loan? |
| Attachments: | image.png; image.png; image.png |

That is the pct that we are neutral or cash equivalents, which is why we are not down very much, around 3pct on the year. Will email reports early next week, you are most likely up given your entry point this year.... Tony

Sent from my Verizon Wireless BlackBerry

From: Gary Reiss <greiss@sunrx.com>
Date: Fri, 10 Oct 2008 16:38:54 -0400
To: Tony Young<walker@acorncapitalmgt.com>
Subject: Re: How we doing with the loan?
Neutral sounds good. What does the 70% mean?



Gary Reiss
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791 X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

From: Tony Young <walker@acorncapitalmgt.com>
Reply-To: Tony Young <walker@acorncapitalmgt.com>
Date: Fri, 10 Oct 2008 16:18:33 -0400
To: Gary Reiss <greiss@sunrx.com>
Subject: Re: How we doing with the loan?

GCR0200

Same as first one, yes paperwork on way. Been really busy, still heavily neutral, around 70 percent. Discounts in market are crazy. Spending lots of time stress testing models of new company ideas....
Tony

Sent from my Verizon Wireless BlackBerry

---

**From:** Gary Reiss <greiss@sunrx.com>
**Date:** Fri, 10 Oct 2008 15:57:44 -0400
**To:** Tony Young<walker@acorncapitalmgt.com>
**Subject:** Re: How we doing with the loan?
Wired to my cap account on Monday, or in my Cresip account on Monday?

Paperwork to follow?



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791 X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

---

**From:** Tony Young <walker@acorncapitalmgt.com>
**Reply-To:** Tony Young <walker@acorncapitalmgt.com>
**Date:** Fri, 10 Oct 2008 15:20:45 -0400
**To:** Gary Reiss <greiss@sunrx.com>
**Subject:** Re: How we doing with the loan?

Sent over request this afternoon, the entire amount. Will probably see on your end monday....  Tony

Sent from my Verizon Wireless BlackBerry

GCR0201

2

**From:** Gary Reiss <greiss@sunrx.com>
**Date:** Fri, 10 Oct 2008 13:36:03 -0400
**To:** Tony Young<walker@acorncapitalmgt.com>
**Subject:** How we doing with the loan?



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
  *Phone: 800-786-1791 X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

GCR0202

# Exhibit C

**Jared Reiss**

| | |
|---|---|
| **From:** | D. A. Walker Young [walker@acorncapitalmgt.com] |
| **Sent:** | Wednesday, October 15, 2008 11:12 AM |
| **To:** | Gary Reiss |
| **Subject:** | RE: Loan Status? |
| **Attachments:** | image001.png |

I will need to recall the wire to prime, will do right now. It will go to your Wachovia account. "Gone out" means if it has left our bank....Tony

**From:** Gary Reiss [mailto:greiss@sunrx.com]
**Sent:** Wednesday, October 15, 2008 10:52 AM
**To:** Tony Young
**Subject:** Re: Loan Status?

Not sure what "gone out" means.

Wired to my account at Wachovia or sent to my account at Cresip?

I should NOT be going direct to Prime.



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791  X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

**From:** Tony Young <walker@acorncapitalmgt.com>
**Reply-To:** Tony Young <walker@acorncapitalmgt.com>
**Date:** Wed, 15 Oct 2008 10:50:33 -0400
**To:** Gary Reiss <greiss@sunrx.com>

GCR0223

**Subject:** Re: Loan Status?

Should have gone out, will call and check, be back to you... Tony

Sent from my Verizon Wireless BlackBerry

---

**From:** Gary Reiss <greiss@sunrx.com>
**Date:** Wed, 15 Oct 2008 10:37:16 -0400
**To:** Tony Young<walker@acorncapitalmgt.com>
**Subject:** Loan Status?



**Gary Reiss**
Chief Operating Officer

*815 East Gate Drive, Suite 102, Mt. Laurel, NJ 08054*
*Phone: 800-786-1791 X 3070 Direct 856-675-1407 Cell: 215-630-5112 Fax: 973-828-0394*

greiss@sunrx.com

*SUNRx is shining light on Prescription Benefits Administration through leading edge technology and expert customer service which translates into substantial savings for our clients.*

Visit us at http://www.sunrx.com

CONFIDENTIALITY NOTICE: This e-mail, including attachments, may include protected health information (PHI), confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed or the individuals designated to view such information per federal HIPAA regulations. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately. Please delete it from your files if you are not the intended recipient. Thank you for your compliance.
Copyright 2007 SUNRx Inc.

GCR0224